**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Rachel Turner, individually and on behalf of all other similarly-situated individuals, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Condustrial, Inc. d/b/a Medustrial Healthcare and Staffing Services, Medustrial Healthcare, and Medustrial Healthcare Referral Services, )<br>)<br>)<br>)<br>)<br>Defendant. )<br>_____ ) | **COMPLAINT**<br>(Jury Trial Demanded) |

Rachel Turner, individually and on behalf of all other similarly-situated individuals, by way of this Complaint in the above-captioned matter, would allege and show unto this Honorable Court the following:

**NATURE OF THE ACTION**

1.      Rachel Turner is a licensed practical nurse ("LPN") who Defendant hired and placed at South Carolina Department of Corrections ("SCDC") to provide medical services to inmates. Turner consistently worked but was not paid for overtime. On September 5 2015, SCDC inmates took Nurse Turner and a SCDC nurse hostage. Law enforcement witnessed an inmate holding Nurse Turner in a chokehold with a long sharp object at her throat. The inmate threatened to cut off Nurse Turner's fingers. After the hostage incident, Defendant refused to grant Nurse Turner any Family Medical Leave Act leave or to grant her other employee benefits

1

such as health insurance, short-term disability benefits, long-term disability benefits, continuation of life insurance with waiver of premium because of disability, unemployment benefits, workers' compensation protection, and the like.  Defendant willfully and intentionally mischaracterized Nurse Turner and hundreds of other similarly-situated persons as independent contractors rather than employees.  This is an action brought individually and as a collective action for unpaid overtime compensation, liquidated damages, attorney's fees, and for other relief under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et. seq. ("FLSA").  The collective action provisions under the FLSA provide for opt-in class participation.

2. Plaintiffs also seek remedies under South Carolina law on an individual and class-wide basis.  Those claims are proposed as opt-out class claims under Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES, JURISDICTION AND VENUE

3. Plaintiff Rachel Turner is a citizen of Great Britain, a permanent resident alien in America since about age 7, and resides in Lexington County, South Carolina.

4. Defendant Condustrial, Inc. is a domestic company doing business in Richland County in the State of South Carolina.

5. Defendant Condustrial, Inc. is registered with the Secretary of State of South Carolina to do business in this state.

6. Defendant Condustrial, Inc. does business as Medustrial Healthcare and Staffing Services ("Medustrial").

2

7. Defendant Condustrial, Inc. does business as Medustrial Healthcare ("Medustrial').

8. Defendant Condustrial, Inc. does business as Medustrial Healthcare Referral Services ("Medustrial").

9. Condustrial and Medustrial are the same company and are referred to herein collectively as "Defendant."

10. One of Defendant's clients is the SCDC. SCDC operates secure facilities for criminal offenders and provides the offenders with rehabilitative programs to safely transition the offenders back into society.

11. SCDC contracted with Defendant to employ medical personnel, including Plaintiff, to help treat inmates in the custody of SCDC.

12. Plaintiff brings this action individually and as an opt-in, collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all individuals employed by Defendant at any time within the three years prior to joining this lawsuit, who were non-exempt employees and who worked in excess of forty (40) hours in any given work week, but who did not receive overtime compensation of at least one and a half times their regular hourly wage for any and all overtime hours.

13. Upon information and belief, this action satisfies the requirements of Rule 23(a), Fed. Civ. P., as alleged in the following particulars:

   a. The proposed Plaintiff class is so numerous that joinder of all individual members in this action is impracticable;

3

    b. There are questions of law and/or fact common to the members of the proposed Plaintiff class;

    c. The claims of Plaintiff, the representative of the proposed Plaintiff class, are typical of the claims of the proposed Plaintiff class; and

    d. Plaintiff, the representative of the proposed Plaintiff class, will fairly and adequately protect the interests of the class.

14. In addition, upon information and belief, this action satisfies one or more of the requirements of Rule 23(b), Fed. R. Civ. P., because the questions of law and/or fact common to the members of the proposed Plaintiff class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

15. Upon information and belief, Defendant has employed numerous personnel in the past three years.

16. Upon information and belief, the personnel that Defendant contracts to provide to its clients have been mischaracterized as independent contractors.

17. Upon information and belief, many, if not all, of the mischaracterized employees frequently work over 40 hours a week and are not paid time and a half, as required by law.

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 216(b), because this action is based, in part, on the FLSA.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant is located within this judicial district and division, and the majority of

unlawful labor practices giving rise to Plaintiff's claims were committed in the Columbia Division of this Court.

# FACTS

20. Defendant Condustrial, Inc. describes itself as a "full service construction and industrial supplemental employer." (Condustrial Website www.condustrial.com , Jan. 20, 2017.)  It has offices "throughout the Southeast and Mid-Atlantic United States to serve all your needs and a Travelers Division that can place skilled labor anywhere in the USA or internationally." (Id.)  Defendant has 13 offices per its website.

21. Medustrial is a division of Condustrial, Inc.  (Medustrial website, www.medustrial.com , Jan. 20, 2017).  "Whether the need is temporary or long-term, Medustrial Healthcare Staffing Service has clinical and non-clinical staff available and read to work for you." (Id.)  "Medustrial Healthcare Staffing Service can meet all your needs from clinical staffing (RN, LPN, CAN, etc.) to non-clinical staffing (housekeeping, medical records, medical coders), etc." (Id.)  "We can also provide your facility with staff for non-medical needs like dishwashers, grounds maintenance, etc." (Id.)

22. Defendant entered into a contract with SCDC on September 15, 2008 "to provide qualified nursing professionals to provide services to patients who are under the custody and control of SCDC."

23. Pursuant to the September 15, 2008 contract, Defendant agreed to provide the services of its employees to SCDC:

> RN's, LPN's, assigned to SCDC by Contractor are *employees* of Contractor and not SCDC. These *employees* shall be paid for their services only by Contractor. All matters concerning wages, expenses, hours worked and paid, working conditions, and other similar administrative matters shall be resolved between Contractor and its *employees* and not between *employees* and SCDC. Contractor shall be responsible for withholding federal and state income taxes, paying federal Social Security taxes, unemployment insurance and maintaining workers' compensation insurance in an amount and under such terms as required by the State of South Carolina.

(Emphasis added.)

24. Despite Defendants contractual obligation to provide SCDC with employees, Defendant hired staff to service SCDC and other clients and illegally treated them as independent contractors.

25. The existence of the SCDC contract is evidence that Defendant knew that Plaintiff and other members of Plaintiff class were actual employees, as defined under the law. But, out of self-serving interests, Defendant willfully treated employees as independent contractors.

26. Upon information and belief, staff were required to sign independent contractor agreements like the ones signed by Plaintiff on February 8, 2013 and October 9, 2014, in an effort to bolster Defendant's assertion that they were not employees.

27. Defendant misclassified its staff, who were or continue to be employees of Defendant, entitled to employee rights, including overtime pay, healthcare insurance, Family Medical Leave Act protection, workers' compensation benefits, and other

employee benefits such as short-term disability benefits, long-term disability benefits, life insurance benefits, accidental death and dismemberment benefits, retirement and pension benefits, unemployment benefits, matching payroll taxes, paid time off, holidays, funeral leave, civil leave for jury service, etc.

28. Upon information and belief, staff who worked for Defendant did not receive credit through the Social Security Administration for quarters worked; thus, employees did not accrue Social Security credit.

29. Defendant was in fact born out of controversy. In 2002, managers of Tradesman International, Inc. – a construction labor contracting company – breached their duty of loyalty and non-competition agreements to form a competing business known as Condustrial, Inc.

30. Condustrial, Inc. survived and went on to form a division – Medustrial -- which recruited, hired, and supplied medical staffing.

31. Plaintiff began working for Defendant as an LPN on February 23, 2013.

32. Plaintiff has been in the nursing field for 23 years.

33. Plaintiff worked for Defendant until September 15, 2015, until she was injured on the job when a SCDC inmate held her hostage.

34. As an employee of Defendant, Plaintiff was assigned to work on a regular assignment at SCDC. During her employment with Defendant, Plaintiff worked at exclusively at SCDC performing assigned medical services.

35. Plaintiff was a good employee; during her employment with Defendant, SCDC named her employee of the month.

36. Plaintiff's schedule would vary only slightly from week to week, dependent on the needs of SCDC. Typically, Plaintiff worked five (5) to six (6) days a week and was scheduled for twelve (12) hour shifts, which resulted in Plaintiff working at least sixty (60) hours a week and ranging up to seventy-two (72) hours a week.

37. Plaintiff and other members of Plaintiff class consistently worked over forty (40) hours a week.

38. The position held by Plaintiff was an integral part of Defendant's medical services.

39. Defendant relied upon the work of Plaintiff to provide medical staffing services to its clients.

40. Plaintiff's pay was non-negotiable and predetermined at a rate initially of Twenty-one and No/100 ($21.00) Dollars an hour, and then increased to Twenty-two and No/100 ($22.00) Dollars an hour following her first month of working at Defendant's facilities.

41. Plaintiff was paid the same amount per hour regardless of her skill level, speed, or the amount of tasks accomplished for SCDC.

42. Plaintiff did not provide any of her own tools or equipment in her work for Defendant. Rather, Defendant or the work site provided all supplies, tools, computer, and equipment.

43. Plaintiff had little control over when she worked for Defendant. SCDC would notify Defendant of need for coverage, with shift hours, location of shift, and type of shift. Defendant would then notify Plaintiff of the available shift, which

Plaintiff could then accept or reject.  Plaintiff did not have any input into which hours or how many hours she would work during available shifts. Often, Defendant would specifically request Plaintiff to work a particular shift.

44.    While working, Plaintiff would be under the supervision and guidance of site-supervising nurse employed by SCDC. Plaintiff was assigned tasks each day by the site supervising nurse. Plaintiff had no degree of control as to what she did during her working day. If an issue arose, Plaintiff was to report the incident to the site-supervising nurse.

45.    Plaintiff was required to wear a SCDC badge at work.

46.    Plaintiff had a SCDC logon name and passcode.

47.    Plaintiff was compensated for overtime only when she worked at one of the SCDC facilities –Kirkland Reception and Evaluation Center.  Otherwise, she and other similarly-situated staff of Defendant were not compensated for overtime at the required rate of "not less than one and one-half times" the employee's regular rate of pay.

48.    Defendant conducted annual performance evaluations on Plaintiff.

49.    Defendant conducted annual testing on Plaintiff to determine her continued eligibility to work.

50.    Defendant required Plaintiff to attend mandatory, periodic staff meetings.

51.    Defendant required Plaintiff to submit weekly reports to Defendant.

52.    Plaintiff was subject to discipline and termination by Defendant.

53.    Defendant had the right to fire Plaintiff.

9

54. Upon information and belief, the circumstances described above regarding Plaintiff's employment are also applicable to Plaintiff class.

55. This is not the first time that Condustrial, Inc. has mistreated employees. In lawsuits against this same employer within the last eight years, Defendant admitted to accepting premiums from employees for a self-insured group healthcare plan and then refusing to pay claims after the Defendant filed Chapter 11 Bankruptcy.

### FOR A FIRST CAUSE OF ACTION
(Fair Labor Standards Act—Failure to Pay Overtime Wages)
(Individual and Collective Action, 29 U.S.C. § 201 *et seq.*)

56. All prior allegations not inconsistent herewith are hereby realleged as fully and effectually as is set forth herein verbatim.

57. Defendant is an "employer" for purposes of the FLSA, 29 U.S.C. § 203(d).

58. Plaintiff and the members of Plaintiff class were employees of Defendant for purposes of the FLSA during times relevant to this Complaint. Plaintiff was not exempt from receiving the FLSA overtime benefits, because Plaintiff's position did not meet criteria for an "executive," "administrative," or "professional" employee exemption, as those terms are defined under the FLSA. *See* 29 C.F.R. 213 (a)(1). Said class includes but is not limited to Defendant's staff including but not limited to LPNs, such registered nurses who performed similar duties, etc.

59. The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of

pay for all hours worked over forty (40) hours in a workweek. *See* 29 U.S.C. § 207(a).

60. Defendant failed to pay Plaintiff and the members of Plaintiff class at the rate of one and one-half times their normal rate of pay for all hours worked in excess of forty (40) hours in a workweek.

61. During all times relevant to this complaint, Defendant repeatedly violated the FLSA with respect to Plaintiff and members of Plaintiff class by failing to compensate Plaintiff and members of Plaintiff class at the rate of one and one-half times Plaintiff and members of Plaintiff's class for all hours worked in excess of forty (40) hours in a workweek.

62. Plaintiff and members of Plaintiff class are also entitled to an award of back pay at their regular hourly rate or their overtime rate, as appropriate compensation for all time spent in working for Defendant, which was wrongfully excluded by Defendant in calculating their compensable time.

63. The failure of Defendant to compensate Plaintiff and members of Plaintiff class for overtime work, as required by the FLSA was knowing, willful, intentional, and done in bad faith.

64. Plaintiff and members of Plaintiff class are entitled to liquidated damages equal to the amount of overtime compensation and unpaid compensation due to them under the FLSA, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

65. The work and pay records of Plaintiff and members of Plaintiff's class are in the possession, custody, and/or control of Defendant, and Defendant is under a

duty pursuant to Section 11(c) of the FLSA, 29 U.S.C. § 211(c), and pursuant to regulations of the United States Department of Labor to maintain and preserve such payroll and other employment records from which the amount of Defendant's liability can be ascertained. Plaintiff requests an order of this Court requiring Defendant to preserve such records during the pendency of this action.

66. Plaintiff and members of Plaintiff class are also entitled to an award of reasonable attorney's fees and costs incurred in prosecuting this action, pursuant 29 U.S.C. § 216(b).

### FOR A SECOND CAUSE OF ACTION
(South Carolina Payment of Wages Act)
(Individual and Class Action)

67. Plaintiffs repeat and reallege each and every allegation of Paragraphs One through Fifty-five as if restated herein verbatim.

68. Defendant is an "employer" as defined by the South Carolina Payment of Wages Act, S.C. Code Ann § 41-10-10(1).

69. Defendant employed Plaintiffs and the members of the Plaintiff class within the State of South Carolina.

70. Defendant owes Plaintiffs and the members of the Plaintiff class "wages" as defined in Section 41-10-10(2) of the Act, to compensate them for labor rendered to Defendant, vacation, holiday, sick leave, and benefits due to an employee, as required by law.

71. Defendant has failed to pay Plaintiffs and the members of the Plaintiff class all wages due, as required by Sections 41-10-40 and -50 of the Act.

72. Defendant's failure to pay Plaintiffs and the members of the Plaintiff class all wages due is willful, without justification, and in violation of the duty of good faith and fair dealing.

73. Pursuant to Section 41-10-80(c) of the Act, Plaintiffs and the members of the Plaintiff class are entitled to recover in this action an amount equal to three times the full amount of their unpaid wages and costs and reasonable attorney's fees.

WHEREFORE, having fully set forth their allegations against Defendant, Plaintiffs respectfully request that the Court enter judgment for the following relief:

    a.    An order authorizing the sending of appropriate notice to current and former employees of Defendant's medical staff who are potential members of the collective action under the FLSA;

    b.    A declaratory judgment that Defendant has willfully and in bad faith violated the overtime compensation provisions of the FLSA, and have deprived Plaintiffs and the members of the Plaintiff class of their rights to such compensation;

    c.    An order requiring Defendant to provide a complete and accurate accounting of all the overtime compensation and other compensation to which Plaintiff and the members of the Plaintiff class are entitled;

    d.    An award of monetary damages to Plaintiffs and the members of the Plaintiff class in the form of back pay for overtime compensation and other compensation due, together with liquidated damages in an equal amount;

    e.    Injunctive relief ordering Defendant to amend its wage and hour policies to comply with applicable laws;

  f. Pre-judgment interest;

  g. An order certifying a class action under Rule 23 of the Federal Rules of Civil Procedure to remedy the class-wide violations of the South Carolina Payment of Wages Act;

  h. Treble damages pursuant to the South Carolina Payment of Wages Act;

  I. Attorney's fees and costs; and,

  j. Such further relief as the Court deems just and proper.

Respectfully Submitted,

s/Nekki Shutt
Nekki Shutt (Fed ID No. 6530)
Janet Rhodes (Fed ID No. 10521)
CALLISON TIGHE & ROBINSON, LLC
P.O. Box 1390
Columbia, South Carolina 29202-1390
Tel. (803) 404-6900
Fax (803) 404-6901
nekkishutt@callisontighe.com
janetrhodes@callisontighe.com

**ATTORNEYS FOR PLAINTIFFS**

Columbia, South Carolina

January 23, 2017